UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         CRIMINAL NO. 17-20261

v.                                         HON. ROBERT H. CLELAND

D-3 ROXANNE MCGLADE,
        a/k/a "Roxanne Harper"

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, files this sentencing memorandum to inform the Court of the government's position at sentencing. Roxanne McGlade assisted her husband, Carlos Harper, and a seventeen-year-old family friend, William Fields, commit four armed robberies that seriously injured two women and threatened the lives of several other innocent people. In light of the seriousness of this conduct, the government requests a significant term of imprisonment.

## BACKGROUND

Roxanne McGlade, her husband Carlos Harper, and William Fields committed a series of robberies in Detroit, Michigan in late 2014 and early 2015. McGlade participated in four robberies, driving Harper and Fields to local businesses with the knowledge that the two men intended to commit armed robberies. In some instances, McGlade also drove Harper and Fields away from the scene of the crime and pawned stolen items. McGlade brought along her sixteen-year-old daughter for at least one of the robberies.

    a.  The Robberies

On December 15, 2014, Harper and Fields robbed an Amicci's Pizza delivery man at gunpoint near an address on Green Street in Detroit, after luring him there by ordering pizza. McGlade drove Harper and Fields to and from the robbery.

On December 18, 2014, Harper and Fields robbed the A & G Dollar Plus store located on West Vernor Street in Detroit, while the husband and wife owners were closing the store for the night. Harper and Fields held them both at gunpoint. McGlade drove Harper and Fields to this robbery.

On December 24, 2014, Harper and Fields robbed the West Fort Street Bar in Detroit – shooting one woman in the stomach and one woman in the leg. McGlade drove the getaway car. After the robbery, McGlade learned that at least one woman had been shot by Harper inside the bar. During the robbery, Carlos Harper collected phones and jewelry from the patrons. According to records obtained from a pawn shop, McGlade pawned four gold rings, four gold earrings, five gold chains, and three gold charms for $530 on December 29, 2014.

On January 9, 2015, Harper and Fields robbed Favi's Nail Salon on Springwells Street in Detroit. Immediately upon entering the nail salon, Harper fired a shot into the floor in front of a young boy and his mother. McGlade drove them to and from the robbery, with her sixteen-year-old daughter in the car. Harper and Fields took cash from the store, cell phones, and jewelry from the patrons. According to records obtained from Michigan Cash for Gold pawn shop, on January 10, 2015, McGlade pawned two gold rings and assorted silver jewelry for $60.

### b.  Harper and McGlade Flaunt Their Crimes on Facebook

According to records obtained from Facebook, McGlade posted the following image to her Facebook page on January 6, 2015 – three days before the nail salon robbery:

3



"Hitting a lick" is a slang term for committing a robbery. "Trap" is a slang verb that can be used to describe a range of illegal activities. In response to the post, Carlos Harper commented: "Rt you know it." McGlade responded by posting a wink: ";)".

    c. <u>McGlade's First Interview with Law Enforcement</u>

On March 21, 2016, ten months prior to her arrest in this case, ATF agents interviewed McGlade at the Almar Motel in Southgate. McGlade was only partially truthful. After ATF agents told McGlade that they knew that she and her

daughter were in the car during the nail salon robbery, McGlade admitted that
Harper told her to drop him off and pick him up near Favi's Nail Salon.

At the time of the interview, ATF agents had only identified Carlos Harper
as one of the robbers, and were still attempting to identify William Fields.
McGlade told the agents that she only knew of the second robber as "Mexico" and
that "Mexico" had come to her house a few times when she lived in Detroit.
However, McGlade's Facebook paints a different picture – as early as January
2015, she was posting pictures of Fields and calling him "Billy" in the captions.
McGlade's daughter also commented on Facebook in 2015 referring to "Billy" as a
"new addition" to their "circle." Fields was later identified as the second robber
through other investigative means.

During the interview, McGlade denied being involved in the West Fort
Street robbery, though she admitted to pawning jewelry. McGlade stated that her
husband told her the jewelry was from his sister.

  d. <u>McGlade is Arrested on the Criminal Complaint and Interviewed Again</u>

In January 2017, ATF agents arrested McGlade on the criminal complaint in
this case. She agreed to speak with them. During the interview, McGlade said she
did not have any guns, despite the agents confronting her with information gleaned

from a jail call in which McGlade and Harper discussed giving their daughter "the pistol." McGlade stated she did not know what the agents were talking about.

Regarding the robberies, McGlade stated that she thought she was driving Harper and "Mexico" to drug deals, and that Harper never told her he was committing robberies. When one of the ATF agents reminded McGlade that she had already admitted to driving Harper to the Favi's Nail Salon robbery, McGlade stated she did not know that was a robbery, though she found it "weird" that "Carlos and Mexico" were wearing all black when she dropped them off. When specifically asked if she knew a Billy, McGlade said she did not, but that "Mexico" used to come over every day.

McGlade repeated that she thought the jewelry she pawned for Harper came from his sister. In a March 2017 jail call, Harper instructed McGlade as to what to tell law enforcement about the jewelry in an attempt to limit her criminal exposure.

e.   Indictment and Rule 11 Plea Agreement

On April 27, 2017, a grand jury returned a ten-count indictment charging Harper, Fields, and McGlade with various crimes relating to the robberies. On February 5, 2018, McGlade pleaded guilty to Count One (Conspiracy to Interfere with Commerce by Robbery) and Counts Three, Five, Seven, and Nine (Interference with Commerce by Robbery). According to the Rule 11 plea

6

agreement, the government calculated a guideline range of 135 to 168 months, but the defendant disagrees with this calculation. The Probation Department agrees with the government's calculation. In the Rule 11 plea agreement, the government agreed to make a non-binding recommendation to the Court of a sentence no higher than the bottom of the guideline range calculated by the government. Neither party filed objections to the Pre-Sentence Report.

## ARGUMENT

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover, the Guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). Thus, the starting point for McGlade's sentence is 135 to 168 months.

a.    The Nature and Circumstances of the Offense

McGlade's participation in these crimes is serious. She facilitated armed robberies that directly harmed and threatened the lives of innocent people. The victims suffered significant harm that continues to affect their lives. McGlade helped her husband even after she knew that at least one woman was shot as a result of the robberies. Indeed, it was *after* the women were shot in the Fort Street Bar robbery that McGlade posted the photo on Facebook bragging about "hit[ting] licks" and "get[ting] money" with Harper. By involving her teenage daughter in the robberies, she put her family at risk as well.

b.    The History and Characteristics of the Defendant

The government acknowledges that McGlade has some characteristics that weigh in her favor. For example, she has maintained sporadic employment since 2009, and has obtained a GED. (PSR ¶¶ 80, 83-86.) She has only one criminal conviction for failing to display a valid license in 2016. (PSR ¶ 59.) She also is responsible for raising four teenage daughters. (PSR ¶¶ 67-68.)

However, some of McGlade's characteristics weigh against her. The defendant was in her mid-thirties at the time of the offenses, and therefore old enough to understand the seriousness of her conduct. McGlade was well aware that Harper shot at least one person in the West Fort Street Bar, yet she continued to

8

assist him in robbing the nail salon. McGlade's postings on Facebook (in which she appears to take delight in the robberies) and her false statements to ATF agents when questioned about the robberies in March 2016 and January 2017 indicate a certain level of malice.

      c.    <u>Adequate Deterrence and Protection of the Public</u>

Deterrence and protection of the public are critical sentencing factors in this case. General deterrence is a compelling reason to impose a custodial sentence because deterring other individuals from participating in violent crime helps to protect innocent members of the public. Specific deterrence should also be considered. While it may be true that McGlade is less likely to reoffend now that Carlos Harper is in prison, it should also be noted that McGlade freely participated in these crimes over a period of time. She was not forced or threatened to participate. McGlade has stated that she participated in these crimes because she was subservient to Carlos Harper and wanted to have a successful marriage with him. In some ways, this reasoning makes McGlade's participation in the robberies more disturbing because it suggests that, at least to her, the affections of Carlos Harper (a member of a violent street gang, with a long and violent criminal record, and no significant work history) were worth more to her than the safety and well-being of her children and the community.

d.     The Need for Just Punishment

The sentence imposed by the Court should reflect the simple need to impose

just punishment on McGlade. Two victims were seriously hurt. Many more suffer

from fear and anxiety. Small children were among the victims during the nail salon

robbery. The defendant's crimes deserve serious punishment.

e.     Restitution

Lastly, the government requests that the Court require the defendant to pay

restitution to the victims. Five victims provided loss information to the Probation

Department totaling $5,198.38.

## CONCLUSION

For the foregoing reasons, the government requests that the Court impose a significant term of imprisonment, but no more than the bottom of the guideline range.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*s/Michael C. Martin*
Michael C. Martin
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9100
E-Mail: Michael.Martin@usdoj.gov

*s/Amanda Jawad*
Amanda Jawad
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9100
E-Mail: Amanda.Jawad@usdoj.gov

Dated:  May 22, 2018

**Certificate of Service**

I certify that on May 22, 2018, I electronically filed the Government's

Sentencing Memorandum with the Clerk of the Court of the Eastern District of

Michigan using the ECF system which will send notification of such filing to the

following:

Nicholas J. Vendittelli
Attorney for Defendant Roxanne McGlade

                                  *s/Amanda Jawad*
                                  Amanda Jawad
                                  Assistant United States Attorney
                                  211 W. Fort Street, Suite 2001
                                  Detroit, MI  48226
                                  Phone:  (313) 226-9100
                                  E-Mail: Amanda.Jawad@usdoj.gov

12