**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                        Criminal Case No. 17-20261
                                                          Civil Case No. 19-11733

ROXANNE MCGLADE,
a/k/a "Roxanne Harper"

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION**
**TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

## I. INTRODUCTION

In 2018, Defendant Roxanne McGlade pleaded guilty to one count of conspiracy to interfere with commerce by robbery, 18 U.S.C. § 1951(a), and four counts of interference with commerce by robbery, 18 U.S.C. §§ 2, 1951(a). (ECF No. 46.) She was sentenced to eighty-four months imprisonment. (ECF No. 90.) Pending before the court is Defendant's motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 (ECF No. 84), and the amended version of her motion (ECF No. 101). For the reasons stated herein, Defendant's motion will be denied.

## II. BACKGROUND

Between December 15, 2014, and January 9, 2015, Defendant knowingly helped co-defendants William Joseph Fields and Carlos Gasper Harper, her husband at the time, conduct five armed robberies of businesses around Detroit, Michigan. (ECF No. 46, PageID.205.) She drove her co-defendants to the businesses, waited for her co-

defendants as they committed robberies with pistols, and then served as the getaway driver. (*Id*., PageID.205-206.) Gasper Harper shot and seriously injured a victim during one of the robberies. (*Id.*, PageID.207.) On two occasions, Defendant pawned the stolen jewelry obtained during the robberies. (*Id*., PageID.206.)

In February 2018, Defendant pleaded guilty to one count of conspiracy to interfere with commerce by robbery, 18 U.S.C. § 1951(a), and four counts of interference with commerce by robbery, 18 U.S.C. §§ 2, 1951(a) pursuant to a Rule 11 Plea Agreement. (ECF No. 46.) The plea agreement contained a proposed sentencing guidelines range of 135-168 months and an appeal waiver. (*Id*., PageID.209, 212.) Ultimately, the court sentenced Defendant to a below-the-guidelines sentence of eighty-four months' imprisonment. (ECF No. 90, PageID.546.)

Defendant did not appeal her sentence to the Sixth Circuit, but instead presents a timely filed motion to vacate under 28 U.S.C. § 2255. Defendant's initial motion challenged the sentence's length due to alleged ineffective assistance of counsel. (ECF No. 84, PageID.499-501.) In the motion, Defendant asserts that counsel failed to argue that she was a minor participant in the crimes, failed to request a duress departure, and failed to raise her mental health history as a possible mitigating factor. Based on these alleged errors, Defendant asserts that she should have received a sentence of sixty months or less. (*Id.* at PageID.499-501, 512.)

About a year later, after the government responded to the § 2255 motion. (*See* ECF No. 91.) Defendant filed a twenty-seven-page reply brief that, in addition to renewing her ineffective assistance of counsel claims, raised several new arguments that went well beyond the initial ineffective assistance of counsel claims. (*See* ECF No.

101.) In the interest of providing Defendant "a full opportunity to present her arguments in favor of her § 2255 motion," the court opted to construe her "reply as a motion to amend her initial motion to vacate" and granted the motion to amend. (ECF No. 102, PageID.812.) The government has responded to the amended motion to vacate (ECF No. 105), and Defendant has filed a reply brief (ECF No. 106). The amended motion to vacate is now ripe for adjudication.

### III. STANDARD

Under § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). As "[§] 2255 is not a substitute for a direct appeal," *Regaldo v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief. *Frady,* 456 U.S. at 166. The Sixth Circuit has clarified that § 2255 provides three bases for a valid claim: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Further, to establish ineffective assistance of counsel under the Sixth Amendment, a defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). The Court held that in order to prove ineffective

3

assistance of counsel, a prisoner must show 1) "that counsel's performance was deficient" and 2) "that the deficient performance prejudiced the defense." *Id.* at 687.

Demonstrating that counsel's performance was deficient "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Courts must afford defense attorneys "wide latitude" in making tactical decisions and, in analyzing their conduct under the Sixth Amendment, make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Defense counsel is entitled to a "strong presumption" that he made "all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690).

If a defendant succeeds in proving deficient attorney performance, she must next prove that the deficient performance resulted in actual prejudice. Prejudice requires more than "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693-94. Rather, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* In cases involving guilty pleas, "the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence . . . The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Thus, to succeed on proving actual prejudice in the context of a guilty plea, a defendant "must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The defendant bears the burden to prove such a claim by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003)). She must come forward with verifiable allegations of fact sufficient to support an entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959). Mere legal conclusions are inadequate. *O'Malley*, 285 F.2d at 735; *Loum*, 262 F.2d at 867. A defendant is not entitled to relief when "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

## IV. DISCUSSION

Defendant's motion to vacate contains a number of claims associated with the alleged ineffectiveness of her legal representation. Defendant alleges her counsel was deficient based on his failure to argue that she played a minor role in the crimes, his failure to argue for a duress departure, and his failure to request a downward departure argument due to Defendant's mental health history. (ECF No. 84, PageID.499-501.) In addition, Defendant's amended motion now also asserts that she was wrongfully denied the opportunity to file a direct appeal by the court, that the indictment was factually defective, that a "firearm and victim sustained injury" sentencing enhancement was improperly applied at sentencing, and that the court erred by directing her to participate

5

in the Inmate Financial Responsibility Program. (ECF No. 101, PageID.786-804.) As the court explains below, each of Defendant's claims are without merit. [1]

## A. Appeal Waiver

Defendant first challenges the validity of the appellate waiver contained in her Rule 11 plea agreement by arguing that "she was denied [the] right [to appeal] by the 'legal error' or 'judicial misconduct' committed by this . . . court." (ECF No. 101, PageID.787.) Specifically, Defendant alleges that at her sentencing hearing, the court failed to inform her that she could still attempt to appeal her sentence despite the express language of a Rule 11 agreement barring an appeal. (*Id.*) And because Defendant was misinformed, she argues that the court must invalidate the appeal waiver. (*Id.*) While Defendant's argument is creative, it clearly fails.

The Sixth Circuit has consistently endorsed the validity of Rule 11 appeal waivers. "It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (quoting *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995)); *see also Class v. United States*, —— U.S. ——, 138 S. Ct. 798, 804-05, (2018). "A[n] [appeal] waiver provision is binding and forecloses appellate review if (1) the defendant's claim falls within the scope of the appeal waiver provision; and (2) the

---

[1]    In addition to addressing Defendant's amended motion on the merits, the government's response argues that it should be struck because it raises new claims that do not rely on the same core facts as the original claims raised in her timely § 2255 motion. (*See* ECF No. 105, PageID.860.) While this argument may have some validity, because all of Defendant's new claims fail on their own merit, the court declines to sift through each of claims to determine if they comply with the requirements of Federal Rule of Civil Procedure 15(c).

defendant "knowingly and voluntarily" agreed to the plea agreement and waiver." *United States v. Milliron*, 984 F.3d 1188, 1193 (6th Cir. 2021) (citation omitted).

Here, Defendant does not dispute that she signed a Rule 11 plea agreement that contained the following waiver:

> [] **Appeal Waiver**
> The defendant waives any right she may have to appeal her conviction on any grounds. If the defendant's sentence of imprisonment does not exceed the maximum of the government's proposed sentencing guideline range described in paragraph 2B, above, the defendant also waives any right she may have to appeal her sentence on any grounds. If the sentence of imprisonment is at least the minimum of the government's proposed sentencing guidelines range, the government waives any right it may have to appeal the defendant's sentence.
>
> This waiver does not bar filing of a claim of ineffective assistance of counsel in court.

(ECF No. 46, PageID.212.) During the February 5, 2018 plea hearing, the court explained, at length, the implications of the appeal waiver contained in the agreement, and Defendant expressly acknowledged she understood the court's explanation.

> THE COURT: You are, first and foremost, you're giving up the right to appeal the conviction that I will enter if I accept your plea of guilty today. Under other circumstances, you may be able to complain about the entry of a conviction based even upon a guilty plea, claiming that some, there was some defect in the procedure or something like that, but you are, for the purpose of this case, giving up that right and making a permanent decision, a decision that is not going to change.
>
> So if I accept your plea of guilty . . . [y]ou are going to be convicted of the offenses that you admit, and there will be no complaining or second guessing, no appeal. That's your agreement. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
> . . .
>
> THE COURT: If the sentence is as contemplated [by the Rule 11 agreement], that is if one could predict the sentence that is imposed based upon the terms and conditions in the Rule 11 plea agreement, then there's no appeal of the sentence, even if it's tougher than you hoped that it would be. Do you understand that?

THE DEFENDANT: Yes, sir.

(ECF No. 104, PageID.836-37.) And at Defendant's June 5, 2018 sentencing hearing, the court reiterated the implications of the appeal waiver.

> THE COURT: . . . [I]n your Rule 11 agreement, you stipulated that you are not permitted to appeal the conviction or the sentence, as long as the sentence was predicted or predictable from the Rule 11 agreement. So that sentence having been imposed, you are, by your agreement, prohibited from appealing. Do you understand that?

> THE DEFENDANT: Yes.

(ECF No. 90, PageID.550.)

On appeal, it is relatively common for defendants to claim that the sentencing court failed to properly explain the broad preclusive effects of the appeal waiver contained in their Rule 11 plea. *See, e.g.*, *United States v. Melvin*, 557 F. App'x 390, 393-94 (6th Cir. 2013) (unsuccessfully arguing that the district court committed clear error "when it instructed [defendant] that he retained the right to appeal a change in the law, despite the plea agreement's waiver of that right"); *United States v. Padilla–Colon*, 578 F.3d 23, 28 (1st Cir. 2009) (finding that a district court's misstatement was "sufficiently misleading to nullify [the appeal] waiver" because the district court plainly stated that the defendant retained the right to appeal an adverse safety-valve determination when, in fact, the defendant had waived that right in the plea agreement").

But here Defendant is making the opposite claim; she states that the court was required to inform her that "[e]very Defendant convicted after trial or guilty plea is entitled to a direct appeal" and argues that the court's failure to explain the limitations of the appeal waiver prevented her from pursuing a timely direct appeal. (ECF No. 101.

8

PageID.787.) Purportedly in support of this proposition, she cites *United States v. Poindexter*, 492 F.3d 263 (4th Cir. 2007). Defendant takes issue with this court's on-the-record explanation of the terms of the appeal waiver at the sentencing hearing (reproduced above), and Defendant provides an example she contends demonstrates how other district judges in this circuit properly "handle the subject." (*See id.*, PageID.787-88 (quoting *United States v. Williams*, 17-cr-00083 (N.D. Oh. Oct. 10, 2018) (ECF No. 162) (Adams, J.)) ("'I've imposed a sentence within the terms of your plea agreement. I don't believe there is any basis for an appeal, but that's not ultimately my decision. Your plea agreement has an appellate waiver provision. You should discuss that with counsel. If there is any basis for an appeal, then you'll have 14 days. . . to file a notice of appeal.'").)

The problem with Defendant's argument is that *Poindexter* (and other related cases) do not stand for the broad proposition that she asserts. In *Poindexter*, the Fourth Circuit held that it was possible to pursue an *ineffective assistance of counsel claim* when defense counsel refused to file a direct appeal after "after [defendant] unequivocally instructed his attorney to do so" even though the defendant had signed a Rule 11 plea containing an appeal waiver. 492 F.3d at 266, 271.

Likewise, the Supreme Court recently reached essentially the same holding. *See Garza v. Idaho*, 139 S. Ct. 738 (2019). In *Garza*, the Court held that despite the existence of a signed appeal waiver, "[w]here . . . a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions." *Id.* at 746. In reaching its conclusion, the Court noted that the existence of a waiver does not automatically foreclose every possible ground for an appeal since "all jurisdictions

appear to treat at least some claims as unwaiveable," and "[m]ost fundamentally, courts agree that defendants retain the right to challenge whether the waiver itself is valid and enforceable—for example, on the grounds that it was unknowing or involuntary." *Id.* at 745. Because "so much is unknown at the notice-of-appeal stage," the Court found that under the *Strickland* standard, "it is wholly speculative to say that counsel's deficiency [in refusing to file an appeal notice] forfeits no proceeding to which a defendant . . . has a right." *Id.* at 748.

But these precedents are largely inapplicable to the present case because McGlade does not allege that she ever directed her counsel to file a direct appeal. Rather, Defendant seems to be arguing merely that the court should have expressly told Defendant that there are certain limited instances where appeal waivers might not foreclose all appeals. While Criminal Rule 11(b)(1)(N) states that a sentencing court should explain "the terms of any plea-agreement provision waiving the right to appeal," Defendant cites no case law indicating that Rule 11 has ever been found to impose a requirement that a sentencing court provide such a highly technical legal explanation. Indeed, the Sixth Circuit has held that Rule 11 does not even require "ask[ing] a particular question about the appellate-waiver provision." *United States v. Sharp*, 442 F.3d 946, 951 (6th Cir. 2006); *see also United States v. Smith,* 782 F. App'x 452, 454 (6th Cir. 2019) (rejecting a defendant's argument that an appeal waiver was ambiguous). In sum, there is no indication that a district court is required to provide a defendant with a list of possible legal arguments she *might* be able to utilize on appeal

that *may* not be precluded by the appeal waiver she is signing.[2] Because "[t]he terms of Defendant's plea agreement contained language that was substantially similar to the recitation undertaken by [this] court," the court finds that it was more than sufficient to advise Defendant of the implications of entering such a plea agreement. *See United States v. Wilson*, 675 F. App'x 526, 531 (6th Cir. 2017).

### B. Failure to Argue for Minor Role Reduction

Defendant claims her counsel's performance was deficient because he failed to argue that Defendant played a lesser role in the offenses. (ECF No. 84, PageID.511.) Defendant argues that she was a "minimal participant" in the robberies since the robberies were not her idea, she did not help plan them, and she did not provide information or weapons for the robberies; her actions in the robberies were limited to driving her co-defendants and pawning some of the stolen jewelry. (*Id.*) Additionally, she argues that he was only coerced into helping with the robberies when her husband, one of the co-defendants, threatened her physically if she did not assist. (*Id.*, PageID.511-512.) Further, she argues that her post-arrest cooperation warrants a reduced sentence. (*Id.*) But, based on the record, it is clear that Defendant did receive a reduction in her sentence based on her minor role in the crimes.

Initially, the government calculated Defendant's guideline range to be 135-168 months. (ECF No. 46, PageID.209.) However, the court applied a two-level reduction of the offense level based on Defendant's role as a minor participant and calculated a new 108-135 month guideline range. (ECF No. 90, PageID.529-33.) Further, the court varied

---

[2]     And the court also notes that any allocution by the court at a plea hearing regarding the possibly of later invalidating an appeal waiver provision would necessarily create a substantial risk of confusing the defendant.

downward in consideration of the sentencing factors outlined in 18 U.S.C. § 3553(e), specifically noting Defendant's lack of prior criminal history and substance abuse issues. (*Id*. at PageID.540-46.)

Defense counsel made at sentence the very argument Defendant raises in her first claim. (*Id.*, PageID.533.) The court accepted this argument and specifically acknowledged her "relatively minor role" before sentencing her to a below-the-guidelines sentence of 84 months. (*Id.,* PageID.547.) While Defendant now wishes that she received an even *lower* sentence, she has not demonstrated that her attorney's representation fell below levels of professional competence. Nor has she demonstrated that the results of her proceeding "would have been different" but for counsel's errors. *Strickland*, 466 U.S. at 693-94.

In addition to the arguments for variance raised by counsel at sentencing, defense counsel also filed a motion for a downward variance from the advisory guideline range due to Defendant's "lack of criminal history, her lack of involvement in the planning or execution of the robberies, her immediate cooperation with the government against her husband, Carlos Harper, her limited role in the charged offenses, and the obvious care for her minor children." (ECF No. 57, PageID.295.) And Defendant's counsel again emphasized Defendant's minor role in the robberies in the sentencing memorandum. (ECF No. 59, PageID.321.) It is not clear what *more* defense counsel could have done to emphasize Defendant's minor role.

Contrary to her arguments otherwise, Defendant did, in fact, receive a reduction in her sentence for her minor role in the crimes. Even if the reduction is less than she desires, her first claim is insufficient to establish deficient attorney performance or

prejudice because she has not shown that, but for counsel's alleged errors, she would have insisted on proceeding to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (describing standard for showing of actual prejudice); *Short v. United States*, 471 F.3d 686, 696-97 (6th Cir. 2006) (explaining that a defendant's argument that he "wound up with a less favorable plea or sentence than he otherwise would have accepted with the advice of competent counsel . . . is insufficient to establish actual prejudice."). Consequently, Defendant is not entitled to relief on this claim.

### C. Failure to Argue for a Downward Departure Based on Mental Health

Next, Defendant claims her counsel failed to argue for a downward departure based on her history of mental health issues and domestic violence. (ECF No. 84, PageID.513.) Specifically, Defendant claims the court did not adequately consider her previous treatment for depression, bipolar disorder, and anxiety and that counsel never argued that her husband threatened to physically abuse her. (*Id.*)

Both the presentence report and Defendant's sentencing memorandum detail her mental health issues and history of domestic abuse in a previous relationship. (ECF No. 59, PageID.319;  ECF No. 91, PageID.561.) While Defendant may be dissatisfied with how counsel conveyed this information, the court was aware of and considered her history of mental health issues and abuse at the time of sentencing. (ECF No. 90, PageID.541-547; ECF No. 91, PageID.561 (the court commenting upon defendant's "personal history" and viewing her as having been "involved, misguided by Harper, to be sure [and] to some extent, influenced by drug intoxication").)

As to Defendant's assertion that her attorney failed to mention that she was abused by her co-defendant, it does not appear that she ever informed her attorney of

this abuse. Rather, the information was first conveyed to the court in Defendant's motion to vacate, in which Defendant admits that she never reported the abuse of or fear of gang-related retaliation. (ECF No. 84, PageID.513-15.) Be that as it may, "counsel is not ineffective for failing to raise an argument based on facts that he could not reasonably be expected to know." *Thornburg v. Mullin*, 422 F.3d 1113, 1141-42 (10th Cir. 2005). Defendant does not allege that she ever shared this information with her attorney. Based on information in the record, it appears that she told counsel that she had a "good relationship" with her current husband and was not physically abused in the relationship. (ECF No. 59, PageID.318-19.) Counsel does not render deficient performance by failing to raise facts that his client never shared with him.

### D. Duress Defense

Defendant also alleges that counsel failed to take the necessary steps to obtain a psychiatric exam for her and failed to argue that she acted under duress. (ECF No. 84, PageID.515; ECF No. 101, PageID.794, 799.) Defendant alleges she only participated in the robberies after her co-defendant and husband threatened to kill her. (*Id.* at PageID.516.)

Defendant is correct that "[i]f the defendant committed the offense because of serious coercion, blackmail or duress, under the circumstances not amounting to a complete defense, the court may depart downward." 18 USCS Appx § 5K2.12. However, Defendant does not assert that she ever informed her attorney that she acted under duress. Instead, she admits that she never contacted police about her husband's threats and beatings "out of fear." (ECF No. 84, PageID.515.) Her outward behavior and statements made to counsel about her relationship would not indicate that she was coerced.

14

For example, Defendant's sentencing memorandum states that she had a "good relationship" with her husband and was not physically abused in the relationship, but he was a "dominant spouse," and Defendant "had been physically abused in her previous marriage which affected her desire to please and succeed in this relationship." (ECF No. 59, PageID.318-19.) Additionally, according to Defendant, she "maintained her integrity as an example for her daughters by entering into a better relationship with Mr. Harper." (*Id.* at PageID.323.) Furthermore, in one of Defendant's Facebook posts, published three days before a robbery, Defendant included an image with a man and a woman and the comment "get money together." (ECF No. 61, PageID.338.) She responded to her husband's comment on the post with a wink, indicating her enthusiasm for committing the crimes. (ECF No. 90, PageID.530.) Thus, based on the information it appears she shared with her attorney, he would have no reason to raise a duress argument.

Whether or not Defendant was, in fact, abused is immaterial to her ineffective assistance of counsel claim because there is no indication from the record that counsel knew of such abuse. As explained in the previous section, counsel cannot be ineffective for failing to present facts Defendant failed to make known to him. Rather, counsel's performance is assessed "quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 691.

Nor has Defendant presented enough evidence to demonstrate she is actually innocent because she acted under duress. Again, Defendant admitted in her signed Rule 11 agreement that she knew her co-Defendants were committing armed robbery and that she still acted as a getaway driver after learning her husband had shot one of

the previous robbery victims. (*See* ECF No. 46, PageID.205-07.) Defendant worked to pawn the stolen goods, and as the court observed at sentencing, "[Defendant] was inadvisably enthusiastic in a Facebook post" regarding the robberies. (ECF No. 90, PageID.530.) Defendant's latest coercion assertions are insufficient to overcome the clear evidence in the record of her willing participation in the robbery scheme.

### E. Validity of the Indictment

Defendant next argues, in a somewhat convoluted manner, that the charges in the indictment, to which she later pled guilty, are "fatally defective. . . because [the counts] state breach of the law that she never committed." (ECF No. 101, PageID.791.) Defendant argues that the indictment improperly "commingles the hoard of defendants (in this case three) with the same charges" when Defendant "should have been severed from her two co-defendants" because her only conduct was "aiding and abet[ing]."[3] (*Id.*, PageID.790-91.) Defendant cites Count One of the indictment as an example of language that, to her, appears to be asserting that she actually robbed a victim herself by use or threat of force. (*Id.*, PageID.792.) Defendant further argues that her counsel was ineffective because he should have moved to dismiss the indictment as facially invalid. (*Id.*)

The court finds, however, that Defendant's assertion has no basis in law. The fact that Defendant, as a getaway driver, played a less robust role in the robberies compared to his co-conspirators does not mean the indictment is invalid because all three Defendants were listed in the same count. Federal Rule of Criminal 7 requires

---

[3]     And, as already addressed in more detail above, Defendant also asserts even the aiding and abetting charge is void because she acted under duress. (*See* ECF No. 101, PageID.791.)

16

only that an "indictment . . . must be a plain, concise. . . statement of the essential facts constituting the offense charged." *See* Fed. R. Crim. P. 7. "The general rule is that a defendant cannot attack an indictment in a § 2255 proceeding unless the indictment is so defective on its face that it does not charge an offense under any reasonable construction." *United States v. Smith*, No. 86-3652, 1987 WL 35999, at *1 (6th Cir. Feb. 3, 1987) (citing *Eisner v. United States*, 351 F.2d 55, 56 (6th Cir. 1965)). Here, "Defendant presents no facts to support that his indictment was defective to such an extent." *See United States v. Boyd*, No. 04-80391, 2011 WL 13308303, at *8 (E.D. Mich. Aug. 16, 2011) (Cleland, J).

Count One of the indictment, to which Defendant pled guilty, alleges that McGlade and her co-defendants entered a conspiracy to engage in robbery beginning in in December 2014 in violation of 18 U.S.C §1951(a), known as the Hobbs Act. (ECF No. 13, PageID.37.) "To convict [a] defendant for violating the Hobbs Act, the government [is] required to prove defendant: (1) interfered with interstate commerce; and (2) conspired to commit robbery." *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016). The court's review of the indictment reveals that it properly alleged a conspiracy that included Defendant. While, as discussed above, the more minor nature of Defendant's role in the conspiracy was relevant at sentencing, it does not mean she is somehow less guilty of conspiring to violate the Hobbs Act. *See, e.g.*, *Cross v. United States*, No. CR 14-20698, 2018 WL 4679642, at *1 (E.D. Mich. Sept. 27, 2018) (denying a § 2255 petition for a defendant who engaged in robbery conspiracy under 18 U.S.C. § 1951(a) where he "served as a getaway driver for a series of 'smash and grab' robberies of jewelry stores") (Lawson, J.).

Likewise, under 18 U.S.C. § 2, Defendant can be guilty of substantive robbery, as alleged in counts Three, Five, Seven, and Nine whether she committed the robbery herself "or aids, abets" others in committing the offense. Since Defendant concedes in her motion that she "'aided and abetted' . . . Carlos Gasper Harper and William Joseph Fields" in committing the charged robberies, the court finds that these counts in the indictment, each of which alleged that Defendants "did aid and abet each other" in committing robbery are also valid. (*See* ECF No. 101, PageID.791; ECF No. 13, PageID.39, 41 43, 45.)

### F. Application of the Firearm Sentencing Enhancement was Proper

Defendant also argues that the court erred by applying a Sentencing Guideline enhancement for a "firearm and victim sustained injury." (ECF No. 101, PageID.795.) Defendant received a 7-level adjustment to her base offense level under Guideline 2B3.1(b)(2) because a firearm was discharged during two of the robberies. A 6-level adjustment was assessed under Guideline 2B3.1(b)(3)(C) because one of those discharges resulted in life-threatening bodily injury to a victim. Defendant's amended § 2255 motion alleges that those enhancements were applied in error because "she never possessed a gun and had nothing personally to do with any victims." (ECF No. 101, PageID.795.)

The fact that Defendant did not herself possess a gun, however, does not make the enhancement inapplicable. Under the sentencing guidelines, a defendant can "be held accountable for the conduct of others through jointly undertaken criminal activity, (1) the conduct must be in furtherance of the jointly undertaken criminal activity; and (2) the conduct must be reasonably foreseeable in connection with that criminal activity."

*United States v. Elias*, 107 F. App'x 634, 637 (6th Cir. 2004) (citing U.S.S.G. § 1B1.3,

cmt. n.2) (quotation omitted). "In the conspiracy context, [the Sixth Circuit] ha[s] found

that possession of a gun by one coconspirator is attributable to another coconspirator if

such possession constitutes reasonably foreseeable conduct." *United States v. Barron*,

940 F.3d 903, 911-12 (6th Cir. 2019) (quotation and citations omitted). Here, the factual

description in the plea agreement makes clear that her co-defendant's firearm use was

not only reasonably foreseeable, it was actually *known* by Defendant. The statement

Defendant signed in her plea agreement expressly states that Defendant was not only

aware that her coconspirators were armed when they committed the robberies, and she

also admitted to learning that during the December 24, 2014 robbery that "Harper had

shot at least one person inside the bar." (ECF No. 46, PageID.207-08.) Yet less than

two weeks later, she again acted as a getaway driver for her armed co-defendants. (*Id.*)

In sum, Defendant has clearly failed to establish that the court erred by applying the

firearm enhancement.

### G. Financial Responsibility Course

Finally, Defendant argues that the portion of her sentence that requires her to

participate in the Inmate Financial Responsibility Program ("IFRP") while in custody

must be vacated because participation in the program is meant to be voluntary, and the

"BOP lacks the power to compel any inmate to participate" in the program. (ECF No.

101, PageID.788-89.) At sentencing, the court ordered that Defendant owed $5,198.38

in restitution to the victims of her crimes and ordered Defendant's "compliance" with the

IFRP program. (*See* ECF No. 90, PageID.547-49.) Defendant cites out-of-circuit

precedent for her claim that "[a]n inmate's participation [in the IFRP] cannot be

compelled." ((ECF No. 101, PageID.788 (citing *United States v. Lemoine*, 546 F.3d

19

1042, 1047 (9th Cir. 2008).) Defendant's claim fails for two reasons.

First, the court finds that the nature of as IFRP program does not prevent the courts from ordering participation. As the *Lemoine* decision cited by Defendant notes, "[t]he BOP's IFRP applies to *nearly all* post-trial inmates in federal facilities." *See Lemoine*, 546 F.3d at 1046 (emphasis added). Under the IFRP, "unit staff" develop a financial plan for each inmate and monitor her progress in adhering to that plan. 28 C.F.R. § 545.11. The program typically requires a minimum monthly payment toward an imamate's financial obligation, and the BOP may obtain payments from funds earned through prison employment as well as from funds received from outside sources, such as money sent by relatives. 28 C.F.R. § 545.11(b). "An inmate is free to decline to participate in the IFRP, but the failure either to participate or to comply with a financial plan created pursuant to the program carries certain consequences. . . set forth in 28 C.F.R. § 545.11(d)." *Lemoine*, 546 F.3d at 1047. These penalties include various restrictions on an inmate's privileges, work opportunities, and housing status. So, to an extent, Defendant is correct that her compliance with the terms of her IFRP plan is in a sense "voluntary," as a refusal to comply will lead only to the implication of penalties listed in § 545.11(d). *See also Walker v. Streeval*, No. CV 0:19-124-KKC, 2020 WL 1794739, at *3 (E.D. Ky. Apr. 8, 2020*), aff'd.* ("[T]his court and others have repeatedly recognized that an inmate is not 'forced' to participate in the program simply because his failure to do so will result in the loss of certain privileges."). Nevertheless, the Sixth Circuit has explicitly endorsed the practice of "order[ing] that [a defendant] pay restitution through the terms and conditions of the IFRP" because, by ordering participation, "the district court, in effect, adopted these terms and conditions in its

sentencing order." *See Weinberger v. United States*, 268 F.3d 346, 361 (6th Cir. 2001).

Indeed, ordering that a defendant must make restitution payments through the IFRP

while incarcerated is a common and well-recognized practice. *See, e.g.*, *Walker*, 2020

WL 1794739, at *3. Consequently, the court did not commit an error in the present case

by ordering that the terms of Defendant's restitution payments be set by her IFRP plan.

Second, even if this court erred by stating Defendant was *required* to participate

in the financial responsibility program because "virtually all federal courts of appeals to

address the issue have concluded that challenges to restitution orders generally are not

cognizable under § 2255," Defendant's argument would still fail. *United States v.

Mayhew*, 995 F.3d 171, 183 (4th Cir. 2021) (collecting cases).

## V. CONCLUSION

For the reasons explained above, Defendant has not articulated any legitimate

claim for relief under § 2255. Accordingly,

IT IS ORDERED that Defendant's motion to vacate (ECF No. 84) and her

amended motion to vacate (ECF No. 101) are DENIED.

s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 11, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, August 11, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner                    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Criminal\17-20261.MCGLADE.2255MotiontoVacate.AAB.RHC.docx